# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMAL SHEHADEH, # S-10300, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CIVIL NO. 10-985-GPM |
| JOHN COX, et al, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Jamal Shehadeh, an inmate in Logan Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on events that occurred while Plaintiff was housed at Vienna Correctional Center. Plaintiff is serving a ten year sentence for a drug offense. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

The following summary of facts is gleaned from Plaintiff's First Amended Complaint (Doc. 13). Plaintiff was transferred to Vienna Correctional Center on November 10, 2010, and was housed on the second floor of Building 19. This 100-man dormitory had only two working toilets, which Plaintiff shared with approximately 80 to 115 other inmates. Many times, he was forced to wait for over an hour to use the toilet, which resulted in severe discomfort. The dormitory also had other health and safety problems, according to Plaintiff. The heat did not work and several windows were broken, exposing Plaintiff to near freezing temperatures for a ten-day period. He also claims there was black mold on the shower walls and ceilings, and asbestos insulation on the steam pipes, which exposed him to disease-causing mold spores and asbestos particles. Plaintiff

alleges that after he complained about these conditions, he learned from Defendant David that Building 19 was not supposed to be housing offenders (Doc. 13, p. 4).

Plaintiff made numerous verbal and written complaints to various Defendants between November 10 and November 23, 2010. The prison staff working in the housing unit to whom he complained were Defendants Campbell, Howard, Felker, Suits, Allstad, David, Bates, and John Does 1 through 13. On November 19, he filed an emergency grievance with Defendant Cox, and wrote letters complaining of the conditions to Defendants Taylor and Quinn, to which they did not respond. On approximately November 27, he submitted grievances to Defendants Luce and Wiggs, which they denied, and which were later reviewed and denied by Defendant Benton.

Plaintiff also alleges he experienced retaliation for raising these complaints. Upon his arrival at Vienna, he spent approximately two weeks on the second floor of Building 19 in the conditions described above. The second floor is where new inmates are first housed before being moved to the third floor. On November 23, Plaintiff was moved to the third floor, where inmates are placed while waiting to be transferred to general population. However, after three days on the third floor, Plaintiff was moved back to the second floor, which he alleges "had never been done before" (Doc. 13, p.6). He further alleges that the second floor is "used to punish problem offenders since offenders [there] are denied the same priviledges [sic] as offenders in general population." *Id.*

On December 4, 2010, Plaintiff was moved from Building 19 into Housing Unit 5. The next day, he was assaulted by another inmate, and was unable to summon help from any prison staff member until nearly two hours after the assault. Plaintiff alleges that no staff members were near enough to his location to hear his and other inmates' calls for help. Plaintiff suffered a concussion and other injuries and spent two days in the prison hospital.

Finally, on December 22, 2010, Defendants Suits and Campbell put Plaintiff on a transfer bus to Lincoln, Illinois. While on the bus, Plaintiff was denied access to the restroom for six and a half hours except for one stop where he was allowed to urinate into a bucket in the presence of a female officer. Plaintiff claims he endured similar conditions during transfers on August 11, 2010, and November 10, 2010.

Plaintiff seeks injunctive relief (Doc. 4), declaratory relief, and damages.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Inadequate Conditions of Confinement**

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). The objective component of a conditions claim focuses on the nature of the acts or practices alleged to constitute cruel and unusual

punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The pertinent question is whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id.* The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim, in other words, the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety. The prison official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter,* 501 U.S. 294, 303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994); *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

**A. Limited Access to Restrooms**

Plaintiff complains that during the twenty-four days that he spent in Building 19 (Nov. 10 to Dec. 4, 2010), he had to "wait sometimes in excess of one hour to urinate or make a bowel movement which caused Plaintiff severe discomfort" (Doc. 13, p. 7). Most of this time he had to

share two toilets with 80 to 115 other inmates; for the three days he spent on the third floor, he shared three toilets with 106 inmates. Plaintiff made repeated complaints about these conditions to numerous Defendants.

Plaintiff's allegations of lack of access to a toilet for several hours during his transfer of December 22, 2010, as well as his previous transfers, implicate similar concerns. In the case of the December transfer, Plaintiff was allowed one "bathroom" break (urinating in a bucket) during the six and a half hours he was on the transfer bus. He also complains of the presence of a female correctional officer while he relieved himself, but does not give details as to what extent he was able to maintain his privacy. Further, he claims that he was not permitted to have a bowel movement and thus suffered severe discomfort, mental and emotional distress (Doc. 13, p. 8).

The lack of access to toilet facilities for a relatively short period of time has been held not sufficiently serious to state a claim of constitutional dimension. *See, e.g., Clark v. Spey*, Case No. 01-C-9669, 2002 WL 31133198 at *2-3 (N.D. Ill. Sept. 26, 2002) (inmate held in cold cell with no toilet for several hours overnight failed to state a claim); *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1188 (10th Cir. 2003) (pretrial detainee held for five hours in cell lacking a toilet did not state claim for cruel and unusual punishment).

As to Plaintiff's complaint about being observed by a female guard while relieving himself in a bucket during his transfer, such an incident does not amount to a constitutional violation. Cross-gender monitoring in prisons is common and is part of the loss of privacy that goes hand in hand with incarceration. *See Johnson v. Phelan*, 69 F.3d 144, 150-51 (7th Cir. 1995) (complaints that male inmates were viewed in the shower, using the toilet, or undressing in their cells by female guards did not state a claim).

Without a doubt, Plaintiff suffered some discomfort from having to wait his turn to use the

bathroom in the dormitory, and having to hold his bladder and bowels while on the bus. However, the Court finds that the housing conditions Plaintiff describes are not so objectively egregious as to rise to the level of a denial of the "minimal civilized measure of life's necessities" that would create a substantial risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Similarly, the allegations regarding limited bathroom access and privacy concerns during the transfer bus ride do not rise to the level of a constitutional claim. Plaintiff has not shown an objectively serious deprivation of his rights, nor has he described behavior on the part of the Defendants that rises to the level of deliberate indifference under these circumstances.

The incidents Plaintiff describes are the type of "occasional discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574,1581 (7th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This portion of Plaintiff's claim, against Defendants Campbell, Howard, Felker, Suits, Allstad, David, Bates, John Does 1 through 13, Taylor, Quinn, Cox, Luce, Wiggs, and Benton, must be dismissed with prejudice.

**B. Cold**

Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id.* at 644; *see also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056-61 (7th Cir. 1991) (finding

that deprivation of blankets, inadequate winter clothing, malfunctioning heating system, and broken cell windows for four days in extreme cold could constitute Eighth Amendment violation). The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment. *See Dixon*, 114 F.3d at 642; *see also Del Raine v. Williford,* 32 F.3d 1024, 1035 (7th Cir. 1994) (holding that an inmate need not allege frostbite or hypothermia to establish that cold temperatures endangered inmate's health.).

In Plaintiff's case, he alleges that for ten days during mid-November, the heat in his dormitory did not work at all and several windows were broken, allowing cold air to come in and expose him to "near freezing temperatures" (Doc. 13, p. 4). He complained to Defendant Campbell, who refused to either move Plaintiff or contact maintenance to seek repairs of the broken heat and windows. He then complained to Defendants Howard, Felker, Suits, Allstad, David, Bates, and the 13 John Doe Defendants, with similar lack of results.

Plaintiff's allegations regarding the duration and severity of the cold, in light of the above cases, may state a claim for an Eighth Amendment violation. His complaint does not go into detail as to whether he had adequate alternative means to protect himself from the cold. As to the subjective component, Plaintiff has sufficiently alleged deliberate indifference on the part of the correctional unit officers in charge of the second floor of Building 19, who did nothing to seek repairs or otherwise alleviate the cold conditions despite Plaintiff's repeated requests. Because it cannot be determined at this stage of the litigation whether the conditions violated the Eighth Amendment, this portion of Plaintiff's claim cannot be dismissed at this time. Plaintiff shall be allowed to proceed on the claim for inadequate heat against Defendants Campbell, Howard, Felker, Suits, Allstad, David, Bates, and the 13 John Doe Defendants.

### C. Exposure to Asbestos and Mold

Plaintiff describes wet and humid conditions with poor ventilation in the third floor showers, that led to the growth of black mold. Plaintiff also states that he spent only three days on the third floor of Building 19 before he was moved back to the second floor. It appears from Plaintiff's complaint that his potential exposure to mold spores was quite limited if it was confined to the time he spent on the third floor; however, this is not entirely clear. Plaintiff's allegations regarding the possible asbestos insulation on pipes, however, appear to involve the second floor, and possibly the third floor. Notably, Plaintiff does not allege that he suffered any medical or physical symptoms or problems as a result of living under these conditions.

Conditions such as poor ventilation do not fall below "the minimal civilized measure of life's necessities," absent medical or scientific proof that such conditions exposed a prisoner to diseases or respiratory problems which he would not otherwise have suffered. *Dixon,* 114 F.3d at 645 (quoting *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994)). In a similar case where an inmate complained about asbestos-covered pipes near his cell, the Seventh Circuit held that "[e]xposure to moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual." *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993). As to the possible mold exposure, while some courts have allowed similar claims to proceed past threshold review, in those cases the plaintiff alleged actual physical symptoms or illness that may have been caused by the mold exposure. *See, e.g., Munson v. Hulick*, Case No. 10-cv-52-JPG, 2010 WL 2698279 (S.D. Ill. July 7, 2010); *Mejia v. McCann*, Case No. 08-C-4534, 2010 WL 653536 (N.D. Ill. Feb. 22, 2010); *Moran v. Rogers*, Case No. 07-cv-171, 2008 WL 2095532 at *1-5 (N.D. Ind. May 15, 2008).

Plaintiff has not alleged that he suffered any physical ailment or other ill effects from the possible exposure to mold spores or asbestos. Whether he experienced any exposure at all is

speculative, and moderate exposure without any physical symptoms does not rise to the level of a constitutional claim. Therefore, this portion of Plaintiff's claim shall be dismissed with prejudice.

**Count 2 - Retaliation**

Although the unpleasant conditions on the second floor of Building 19 may not constitute cruel and unusual punishment, if Plaintiff was returned there in retaliation for raising complaints about those conditions, he has stated a constitutional violation. The decision to move Plaintiff would normally not be actionable in and of itself (*see, e.g.*, *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992)), however, if the decision to change Plaintiff's housing assignment was taken in retaliation for the exercise of a constitutionally protected right, then it is actionable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner).

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock*, 102 F.3d 267; *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Plaintiff has alleged that he made numerous verbal complaints, wrote to Defendants Taylor

speculative, and moderate exposure without any physical symptoms does not rise to the level of a constitutional claim. Therefore, this portion of Plaintiff's claim shall be dismissed with prejudice.

**Count 2 - Retaliation**

Although the unpleasant conditions on the second floor of Building 19 may not constitute cruel and unusual punishment, if Plaintiff was returned there in retaliation for raising complaints about those conditions, he has stated a constitutional violation. The decision to move Plaintiff would normally not be actionable in and of itself (*see, e.g.*, *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992)), however, if the decision to change Plaintiff's housing assignment was taken in retaliation for the exercise of a constitutionally protected right, then it is actionable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner).

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock*, 102 F.3d 267; *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Plaintiff has alleged that he made numerous verbal complaints, wrote to Defendants Taylor

and Quinn, and sent an emergency grievance to Defendant Cox, seeking to have the conditions in Building 19 remedied by the Defendants. These complaints were made while Plaintiff was on the second floor, before his November 23rd move to the third floor. Instead of repairing the problems, prison official(s) took the unusual step on November 26 of moving Plaintiff back to the second floor, where conditions were worse, rather than keeping Plaintiff on the third floor or moving him to general population. Plaintiff claims that inmates are "never" moved back to the second floor after they have been transitioned to the third floor, although this is what happened in his case. In addition, after Plaintiff was moved back to the second floor, Defendant Bates told him, "see what all your crying got you" (Doc. 13, p. 6). Plaintiff states that after he was sent back to the second floor, he complained to Defendant Suits about the retaliation, but nothing was done to move him. Plaintiff also filed two more grievances on or about November 27. Based on these allegations, this portion of Plaintiff's complaint may not be dismissed at this time.

Although Plaintiff has sufficiently stated the elements of a retaliation claim at the pleadings stage, he has failed to identify which of the Defendants allegedly made the retaliatory decision to move Plaintiff back to the second floor. Accordingly, Plaintiff shall be allowed an opportunity to amend his complaint to identify those Defendants responsible for the retaliatory move of Plaintiff back to the second floor of Building 19.

**Count 3 - Failure to Protect**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a

plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Plaintiff alleges that he was beaten by another inmate on the second day of his stay in Housing Unit 5. Plaintiff does not state that he had received any threats before the assault, or that he notified any prison staff of any threats to put them on notice that he might be in danger. Because Plaintiff did not complain of any specific threats to his safety before the apparently random attack, he has not stated a constitutional claim against any Defendants for failure to prevent or protect him from the attack which occurred. Accordingly, this claim shall be dismissed with prejudice.

**Count 4 - Deliberate Indifference**

Plaintiff further states that his injuries from the attack described above were not treated for two hours, because no correctional officer was on the floor at the time. Other inmates pounded on the plumbing in an attempt to get the attention of a guard, without success. Plaintiff was not able to obtain medical care until the housing unit officer made his rounds. Thereafter, Plaintiff was treated as an inpatient in the prison hospital for two days, for a concussion with symptoms of headaches, vomiting, dizziness, and blurred vision. Plaintiff raises no complaint regarding the medical

treatment he received, but takes issue with the fact that the lack of access to prison staff caused an unnecessary delay in treatment.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, a defendant's inadvertent error or negligence is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000).

Having just sustained a beating and a head injury, Plaintiff's condition clearly was objectively serious. However, no prison official was aware of Plaintiff's problem immediately after the beating. It appears that Plaintiff did get prompt treatment once the housing unit officer arrived on the scene. Therefore, the question is whether the decision to allow inmates to go without direct supervision or the ability to contact a guard for help for a one- to two-hour period evinces deliberate indifference on the part of the prison official(s) who determined the staffing patterns and schedule of rounds. In addition, the officer on duty may or may not have made his/her rounds at the proper time.

Incidents of violence in open-dormitory-style prison housing units have long been a concern, and constitutional violations have been found where prison officials failed to provide sufficient staffing or regular supervision of inmates, resulting in violent attacks. *See, e.g., Smith v. Norris*, 877 F. Supp 1296 (E.D. Ark. 1995) (prison must take reasonable measures to protect inmates, including regular spot checks of open barracks), *aff'd in part, rev'd on other grounds,* 103

F.3d 637 (8th Cir. 1996); *Smith v. Sullivan*, 553 F.2d 373 (5th Cir. 1977) (upholding directive that guard must visit each area of jail once per hour, one guard must be present on each jail floor, and inmates must have access to communication system allowing a call for help at any time); *see also Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996) (allegations of housing conditions making it difficult to summon help from guards may state a claim for deliberate indifference).

Whether the unavailability of any guard to help Plaintiff obtain medical care for nearly two hours after the assault constitutes deliberate indifference or mere negligence cannot be determined at this time. Therefore, this claim cannot be dismissed. Unfortunately, Plaintiff does not identify the guard who eventually came to his aid, nor does he identify the Defendant(s) who made the decision to allow the staffing pattern described by Plaintiff. Therefore, as noted above, Plaintiff shall be allowed an opportunity to amend his complaint as to this claim as well, in order to identify these Defendants.

**Defendants Luce, Wiggs, and Benton**

Plaintiff's only allegations against Defendants Luce, Wiggs, and Benton are that he filed grievances over the unsafe conditions of Building 19 with Defendants Luce and Wiggs, which they denied. He then appealed the denial of the grievances to Defendant Benton, who again denied them.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Moreover, Plaintiff has no constitutional right to have his grievances resolved in his favor. *See Conyers v. Abitz*, 416 F.3d

580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). Accordingly, Plaintiff has failed to state a claim against Defendants Luce, Wiggs, and Benton, and they shall be dismissed from this action with prejudice.

**Defendants Quinn and Taylor**

Similarly, Plaintiff alleges that he wrote letters to Defendants Quinn and Taylor complaining about the prison conditions, but received no response. His complaint contains no other allegations against these Defendants, other than alleging generally that they are, respectively, responsible for the overall operations of all state agencies, and responsible for the overall operation of each prison. However, this is not enough for liability to attach.

"The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Moreover, Plaintiff, like many other inmates, seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). As Chief Judge Easterbrook has stated,

> Public officials do not have a free-floating obligation to put things to rights,

> disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [results]. That can't be right. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595. Accordingly, Defendants Quinn and Taylor shall be dismissed from this action with prejudice.

**Pending Motions**

Along with his original complaint, Plaintiff filed a Petition for Preliminary Injunction (Doc. 4). This Petition requests an order to compel Defendants to open another restroom and repair existing restrooms in Building 19; to prevent Plaintiff from being transferred to another prison in retaliation for filing this case; and to enjoin Defendants from moving additional prisoners into Building 19. The Court notes that the transfer issue is now moot, as Plaintiff was moved to another institution during the pendency of this case.

In considering whether to grant any injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence. Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry*

*Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).

Based on the Court's evaluation of Plaintiff's substantive claims above, he cannot establish the elements required to justify injunctive relief regarding the conditions of Building 19. Moreover, because Plaintiff is no longer housed in the facility where his complaints arose, he is not now subject to any of the allegedly harmful conditions, and his request for injunctive relief has become moot. Accordingly, Plaintiff's Petition for Preliminary Injunction (Doc. 4) is **DENIED.**

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT THREE** fails to state a claim upon which relief may be granted, and thus is **DISMISSED** with prejudice. Defendants **LUCE, WIGGS, BENTON, QUINN** and **TAYLOR** are **DISMISSED** from this action with prejudice. As to **COUNT ONE**, Plaintiff may proceed on his claim in subpart B that the cold temperatures in Building 19 violated his constitutional rights, against Defendants Campbell, Howard, Felker, Suits, Allstad, David, Bates, and the 13 John Doe Defendants. However, all other portions of Count One are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed on his claims in **COUNT TWO** and **COUNT FOUR**, Plaintiff shall file his Second Amended Complaint, naming the individual Defendants directly responsible for the alleged deprivations in Count Two and Count Four, within 35 days of the entry of this order.

Plaintiff is **ADVISED** that the Second Amended Complaint shall contain ONLY the claims designated in this Order as Count One B, Count Two and Count Four, and shall name ONLY those Defendants directly and personally responsible for the allegedly unconstitutional acts (for Count Two, the Defendant(s) who made the decision to transfer Plaintiff back to the second floor; for Count 4, the Defendant(s) who determined the staffing pattern in Housing Unit 5, and the

Defendant guard on duty during the assault). Should the Second Amended Complaint not conform to these requirements, it shall be stricken and the entire case may be dismissed. Failure to file an amended complaint may result in dismissal of this case pursuant to Federal Rule of Civil Procedure 41(b).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the Second Amended Complaint must stand on its own, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint.

Service on the remaining Defendants shall not be commenced until after the Court reviews the Second Amended Complaint.

In addition, the claims asserted in Counts One and Two do not appear to arise from the same transaction, occurrence, or series of transactions or occurrences as the claim in Count Four. The Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Upon review of the Second Amended Complaint, if the Court determines that the claims in Counts One and Two are not sufficiently related to the claim in Count Four, the Court may sever Count Four. If this claim is severed, it would be removed from this case and opened in a new case. A new case number would be assigned and a second filing fee would be assessed. If the Court determines that severance is appropriate, Plaintiff shall be notified and allowed an opportunity to voluntarily dismiss the claim to be severed, thus avoiding the imposition of a second filing fee.

**IT IS SO ORDERED.**

**DATED:** 7/14/2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
U.S. DISTRICT JUDGE