IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMAL SHEHADEH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:10-cv-985-DGW |
| ) | |
| JOHN COX, GLENN HOWARD, BRETT ) | |
| CAMPBELL, NORMAN SUITS, and ) | |
| CHARLES BATES ) | |
| ) | |
| Defendants. | |

ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants on April 12, 2012 (Doc. 76), the Response filed by Plaintiff (*pro se*) on June 4, 2012 (Doc. 95), and the Supplemental Response filed by Plaintiff (as represented by counsel) on September 14, 2012 (Doc. 108). For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

BACKGROUND

Both Plaintiff and Defendants rely, almost exclusively, on the Second Amended Complaint (Doc. 23), which is in the form of an affidavit, for the facts relevant to this Motion for Summary Judgment. The following facts are taken from the Second Amended Complaint except where indicated.

Plaintiff avers that on November 10, 2010, he was transferred to the Vienna Correctional Center and housed on the second floor of Building 19. This floor was used for new arrivals and offenders recently released from segregation until they could be moved to the third floor; and, it was also used "to punish offenders." Upon arrival, Plaintiff began filing grievances about the

living conditions – Plaintiff describes the second floor as having no showers and only two toilets for the 100 man dorm and as a place where inmates do not enjoy the privileges available to other inmates in general population. Plaintiff also sought records of the fire inspection and maintenance of Building 19 because he became aware that the building "was not supposed to be housing offenders." On November 23, 2010, he was moved to the third floor of Building 19, the conditions of which "were as bad as those on the second floor except that the third floor offenders were allowed some of the same privileges as those offenders in general population." Plaintiff again complained by writing letters to state officials and "accosting" every officer he came across.

On November 26, 2010, Plaintiff was again returned to the second floor. As he was moving his property, Defendant Charles Bates (a correctional officer) said "'see what all your crying got you?'" When Plaintiff asked Officer Bates why he was moved back to the second floor, "Defendant Bates told Plaintiff that since Plaintiff enjoyed the second floor so much he and Defendant Campbell [a Lieutenant] thought it would be nice to have Plaintiff permanently assigned to the second floor and Defendant Cox [the Warden] agreed." Plaintiff further states that Defendant Suits (a Major) concurred and approved his move back to the second floor and that he had had conversations "with Defendant Cox and other staff in reference to Plaintiff's complaints." Plaintiff was moved into general population on December 3, 2010. The Second Amended Complaint only mentions Defendant Howard, a Lieutenant, as the person to whom Defendants Campbell and Bates submitted the housing change request. Thus, Plaintiff is asserting that he was moved back to the second floor of Building 19 in retaliation for complaining about the conditions in the building.

Plaintiff has submitted a report created by the John Howard Association, a non-profit entity

that provides "public oversight of Illinois' juvenile and adult correctional facilities," dated September 27, 2011 (Doc., 108, pp. 17-34). The report states that the second and third floors of Building 19 are "the prison's most decrepit, overcrowded living quarters." In general terms, the prison is also over-crowded, vermin infested, in a general state of disrepair (from plumbing to lighting), lacking in heating and air conditioning, and unsanitary. The report recommends that Building 19 should be shut down, that the prison's population be reduced, and the facilities be improved.

Defendants seek summary judgment on qualified immunity grounds arguing that even if the assertions in the verified Second Amended Complaint are true, Plaintiff has presented no facts that his constitutional rights were violated.

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

## DISCUSSION

Qualified Immunity must be decided early in litigation because it is an "'entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). In determining whether Defendants are entitled to qualified immunity, the Court must consider two questions: 1. "Taken in the light most

4

favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, if the answer is yes, 2. was "the right clearly established?" *Saucier*, 533 U.S. at 201; *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011). With respect to the first question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Defendants are not entitled to qualified immunity in this matter. Plaintiff has a clearly established constitutional right to be free from retaliatory acts committed in response to the filing of grievances and complaints related to prison conditions. "Prisoners' grievances, unless frivolous . . . concerning the conditions in which they are being confined are deemed petitions for redress of grievances and thus are protected by the First Amendment." *Hasan v. U.S. Dept. of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005). "'An act of retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.'" *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987)). In order to show that he was impermissibly retaliated against, Plaintiff must show that he exercised a right secured by the First Amendment, that he suffered a deprivation, and that the exercise of his right was the "motivating factor" for the deprivation. *Gomez*, 680 F.3d at 866 (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)); *Pearson v. Welborn*, 471 F.3d 732, 738 (7th Cir. 2006) ("To succeed on his retaliation claim, it was necessary for [Plaintiff] to demonstrate that prison officials retaliated against him for exercising a constitutionally protected right."). Each of these propositions have

5

been sufficiently clear to appraise Defendants in this matter that retaliating against an inmate for exercising his First Amendment Right to complain about prison conditions clearly violates his rights. *See Humphries v. Milwaukee County*, ___ F.3d ___, 2012 WL 6684741, *3 (7th Cir. 2012).

The next step is to determine whether the facts show that Plaintiff's rights were violated. The only evidence cited in this case, Plaintiff's Second Amended Complaint (which is in the form of an affidavit) indicates that Plaintiff complained about the conditions on the second floor of Building 19 by filing grievances. He was subsequently moved to the third floor, an area that was marginally better; but was, within a couple of days returned to the second floor. According to the Second Amended Complaint, the second floor had deplorable living conditions and was only meant to be a temporary staging area. Once moved from the second floor, inmates would have presumably better living conditions and be entitled to more privileges. Thus, when Plaintiff was moved back to the second floor, he lost certain privileges and, as can be inferred from the Second Amended Complaint, believed that he would be housed on the second floor permanently. To support the claim that the return to the second floor was retaliation for the grievances, Plaintiff recounts statements made by third parties and by Defendants. Namely, Correctional Officers David and Allstad (who are not named Defendants) stated that he was being permanently moved back to the second floor for his "complaints about the conditions of the second floor." Defendant Bates also confirmed that the was moved back to the second floor because he had "enjoyed" it so much the first time and because of all his "crying" about the conditions – presumably veiled acknowledgement that he was aware of Plaintiff's complaints about the conditions on the second floor. Defendant Bates also confirmed that he was working in conjunction with Defendant

6

Campbell. And, Defendant Suits acknowledged that he was aware of Plaintiff's complaints and that he and Defendant Cox had approved his return to the second floor.

Defendants nonetheless argue that placement of Plaintiff on the second floor, for whatever reason, cannot be considered retaliation because "[p]risoners have no constitutionally protected right to be assigned to particular housing quarters."  To support this proposition, Defendants cite to *Brown v. Liros*, 391 Fed. Appx. 539, 542 (7th Cir. 2010).  *Brown* does not stand for the proposition cited.  In that case, the Seventh Circuit stated that a "temporary reassignment of housing quarters" is not a deprivation that would lead to an actionable due process claim. However, "due process and retaliation claims are analyzed differently.  Conduct that does not independently violate the Constitution can form the basis for a retaliation claim."  *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).  Defendants also cite to *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988) for the proposition that: "Absent some statutory or regulatory provision that clearly limits prison officials in the exercise of their discretion, a prisoner may be transferred for any reason, or for no reason at all."  Glaringly absent from Defendant's citation to *Williams* is a footnote to that very sentence which states: "A well-established exception to this broad grant of discretion is that *prison officials may not transfer a prisoner in retaliation for his exercise of a constitutionally protected right*."[1]  Thus, the fact that Plaintiff may not have a free-standing constitutional right to a particular prison, or part of the prison, is not fatal to his retaliation claim.  *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

In order to make out a retaliation claim, Plaintiff must show that "he suffered a deprivation that would likely deter First Amendment activity in the future. . . . "  *Bridges v. Gilbert*, 557 F.3d

---

1 The Court cautions defense counsel to accurately cite to case law in briefs before this Court and to include obviously relevant portions of case authority cited.

541, 546 (7th Cir. 2009). Plaintiff has presented evidence that the second floor of Building 19 was an undesirable location in the jail. Plaintiff avers that placement on the floor was used to "punish offenders since many privileges available to offenders in general population are denied to those on the second floor of building 19." Thus, it is reasonable to assume that placement on the second floor would deter additional First Amendment activity.

Defendants further argue that Plaintiff has not shown that his complaints were a motivating factor in the transfer to the second floor and that Plaintiff only has alleged suspicious timing. In non-prison contexts, "suspicious timing alone rarely is sufficient to create a triable issue." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (internal editing, quotation marks, and citation omitted). Plaintiff, however, has asserted more than just timing. As noted above, he has recounted various statements by Defendants that may show retaliatory motivation. Plaintiff also has presented evidence that a return to the second floor "had never been done before and was an administrative decision in response to Plaintiff's complaints . . . ." When timing and the statements made by various Defendants and third parties is considered, Plaintiff has presented sufficient facts from which a jury could conclude that his return to a permanent spot on the second floor of Building 19 was in retaliation for his complaint.[2]

Notwithstanding this conclusion, the Court finds that Defendant Glenn Howard is entitled to summary judgment. There is nothing in the Second Amended Complaint to suggest that Lieutenant Howard's conduct violated Plaintiff's rights. At most, the Second Amended Complaint states that Lieutenant Howard was a supervisor and that he accepted a bed assignment

---

2 Plaintiff was subsequently moved to general population on December 5, 2010 and was "battered by another inmate." He subsequently was issued a ticket for providing false information and sent to segregation. Plaintiff states, although obliquely, that the trip to segregation, and perhaps the battery were also retaliatory acts perpetrated by Defendant Cox.

change request from Defendants Campbell and Bates.  There is no indication that Lieutenant Howard was aware of any grievances filed by Plaintiff, that he (or anyone) made any statements regarding Plaintiff's grievances or his motivation for accepting the submission of a bed change request.   That is, there is no evidence that Lieutenant Howard violated Plaintiff's constitutional rights.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants on April 12, 2012 (Doc. 76) is **GRANTED IN PART** and **DENIED IN PART**.  Summary Judgment is GRANTED to Defendant Glenn Howard only.  Defendant Howard is hereby **TERMINATED** and the Clerk is **DIRECTED** to enter judgment in favor of Defendant Howard and against Plaintiff at the conclusion of this matter.

**DATED: January 10, 2013**

**DONALD G. WILKERSON
United States Magistrate Judge**